[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this action were married in Northford, Connecticut, on June 4, 1993. They have two minor children, issue of the marriage, to wit: SANTINA SPERANZA, who is nearly 13 years old and ANTHONY SPERANZA, aged 4 1/2. As the result of an agreement between the parties, a shared custody and visitation arrangement has been in place since February 23, 2000. The parties have lived separate and apart since January 1999.
The Plaintiff is thirty-one (31) years old and has an eighth grade education. Although she has been employed as a waitress for the past five months, her overall employment since the date of the birth of her children has been sporadic at best, and when she was employed, it has been in low-paying sales clerk type positions. The Court heard testimony that on at least one occasion, the Defendant arbitrarily called the Plaintiff's employer to terminate her position. She currently earns approximately $18,500 per annum mostly in the form of tips. She has no benefits through her employment, however, she did testify that her employer was looking into the possibility of group health coverage, which she estimates will cost approximately $35.00 per week. The Plaintiff suffers from migraine headaches, is battling a substance abuse problem, and she is currently taking Prozac and another medication to help with an anxiety disorder. Given her employment history, her educational background, and her health-related problems, the Court finds that her present earning capacity is limited. Throughout the marriage, the Plaintiff performed most of the household duties, while the Defendant paid CT Page 3531 the bills.
The Defendant is Thirty-seven (37) years old and a high school graduate. He has maintained steady employment with the City of East Haven, first in the Sewer Department, and presently in the Parks Department, where he is Assistant Superintendent. He testified that he took the new job after the Sewer Department became privatized. His current gross income is approximately $45,000.00 per annum. The Court has heard testimony that the Defendant's overtime hours were substantially reduced as a result of his new position, and the Court finds that evidence to be credible. He appeared to the Court to be in good health, and no testimony was offered to the contrary. He has a $50,000.00 group life insurance policy and a pension through the City of East Haven. According to the evidence presented to the Court, the Defendant resumed his participation in the pension plan during fiscal year 1985-86, and that as of the end of fiscal year 1992/1993, his vested contribution account had a balance of $18,217.58. As of the end of fiscal 1998/1999, this account stood at $40,195.97. Assuming a July 1 beginning to the fiscal year, further contributions at 6% of salary (based upon Defendant's Financial Affidavit), together with 3% interest on the account, the Court calculates that the account value as of April 1, 2000, would be approximately $43,200.00., and that the increase in value since the date of the marriage would be $24,981.00.
The parties are the owners of real estate located at 33 Prospect Street, East Haven, Connecticut, which is the primary residence of the minor children. The court finds that the real estate has a fair market value of $130,000.00, and that there is a mortgage thereon with a balance of $93,000.00. The equity therein is $37,000.00. The Court finds that the property was purchased in 1999 for the sum of $123,000.00, and that the down payment of $25,000.00 came from marital funds, including wedding gifts, and, in part, from a settlement claim against East Haven which the Defendant received. Subsequent to the purchase, the parties added certain improvements, including a swimming pool ($7,500.00), a deck, and renovations to the kitchen and to the dining room.
The parties have miscellaneous other property including home furnishings, bank accounts, and motor vehicles. There are, according to the parties affidavits, two motor cycles (both registered to the Defendant), a 1993 GMC Pick-up (registered to the Defendant), and a 1993 Hyundai (in the CT Page 3532 Plaintiff's name) which is unregistered. The Defendant testified that he no longer has the 1992 Lincoln shown on his Affidavit. On or about December 1998, the parties had approximately $10,000.00 in a savings account and a $1,000.00 brokerage account. The Court finds that the Defendant used approximately $7,200.00 of these funds on or about January 1999, to reduce the indebtedness on his motor cycle ($3,500.00) and credit card debt ($3,700.00). The Defendant testified that he made these payments upon the advice of his accountant. The Court finds that these payments were for his own benefit, and this reason was not sufficient to justify the expenditure of marital funds. In addition, the Defendant testified that he had used an unspecified amount of these funds to pay for his attorney's fees. The parties received a tax refund of approximately $5,000.00 attributable to their 1998 income taxes. The Defendant used $2,500.00 to pay the attorney for the minor children, and the balance was given to the Plaintiff.
The Plaintiff, through her counsel, made an oral waiver on the record, that the Defendant be financially responsible for any premiums should she elect COBRA coverage through the Defendant's group health insurance policy.
The Court, having heard the testimony of both parties, and having considered the evidence presented at the hearing, as well as the factors enumerated in Sections 46b-81, 46b-82, and46b-84 of the Connecticut General Statutes, makes the following findings:
1. That it has jurisdiction.
 2. That the marriage has broken down irretrievably, and that ample evidence exists that both parties contributed to the breakdown.
 3. That the allegations of the Complaint are found to be true, in that:
 A. The parties were married in Northford, Connecticut, on June 4, 1993.
 B. Both parties were residents of the State of Connecticut at the time of the filing of the Complaint.
 C. The parties have two minor children issue of the CT Page 3533 marriage, to wit:
 SANTINA SPERANZA, born May 3, 1987, and ANTHONY SPERANZA, born September 27, 1995.
 D. No other children have been born to the Plaintiff wife since the date of the marriage.
 E. Neither party is receiving aid or care from the State of Connecticut or any Town or subdivision thereof.
The Court hereby enters the following orders:
1. The marriage of the parties is hereby dissolved, and that they are hereby declared free and unmarried.
2. Commencing April 3, 2000, and weekly thereafter, the Defendant shall pay to the Plaintiff the sum of $100.00 for a period of two (2) years through and including April 3, 2002, thereafter for a period of three (3) years through and including March 31, 2005, the sum of $50.00 per week, as and for periodic alimony. Said alimony shall terminate upon the death of either party, the remarriage of the Plaintiff, or on March 31, 2005, whichever shall sooner occur. Payment of alimony shall be secured by an immediate wage withholding order pursuant to Section 52-362
of the Connecticut General Statutes.
3. The parties shall have joint legal custody of the minor children, and the Defendant shall have physical custody. The parties shall consult with one another regarding the major decisions affecting the lives of the minor children, including all decisions regarding education, religious upbringing, and major healthcare issues. Visitation shall enter in accordance with the Pendente Lite Agreement of the parties dated February 23, 2000, the terms of which shall be incorporated by reference herein, a copy of which shall be appended hereto as Exhibit A and made a part hereof.
4. After hearing the testimony of the parties, reviewing the financial affidavits, the current custody/visitation arrangement, the earning capacities of the respective parties, and the deviation criteria set forth in Sec. 46b-215a-3 (b) (6) of the Child Support and Arrearage Guidelines Regulations, the Court finds sufficient cause to deviate from the Child Support Guidelines. The Court finds that child support according to the CT Page 3534 Guidelines would be $107.00 per week, but the Plaintiff will not be ordered to pay child support at this time due to the shared custody arrangement which substantially reduces the Defendant's custodial expenses, and the fact that sufficient funds remain for him to meet the basic support needs of the children.
5. The Defendant shall continue to maintain health insurance for the minor children through his current employment. Any unreimbursed medical, dental, optical, pharmaceutical, psychological, psychiatric, and orthodontic expenses, including any deductibles, for the minor children shall be shared 33% by the Plaintiff and 67% by the Defendant during the minority of the children. However, if either or both children shall not have graduated from high school at the time of their eighteenth birthday, then the provisions of Section 46b-84 (b) shall apply. In addition, the provisions of Section 46b-84 (e) shall apply regarding the processing of medical insurance claims for the minor children.
6. The Court has reviewed the Affidavit of Services on file and finds the charges to be fair and reasonable. The Court further finds that the Plaintiff lacks ample liquid assets to pay her attorneys fees in full and orders the Defendant to pay to Plaintiff's counsel, JANE HOLLER, ESQ., the sum of $1000.00 within ninety (90) days of the date of this Memorandum. The Plaintiff shall be solely responsible for the balance of said fees.
7. The Defendant shall maintain and pay the premiums on, and designate the Plaintiff as beneficiary of his current group life insurance in an amount of no less than $25,000.00, so long as said insurance is offered to him as an incident of his employment, and for so long as he shall have an alimony obligation to her, and/or until such time as the Plaintiff receives her share of the pension in a lump sum, or until such time as she commences receipt of her share in the form of an annuity. The intent of this order is to secure the Plaintiff's share of the pension should the Defendant die prior to his receipt of any lump sum benefit or the commencement of any annuity portion of his retirement benefit, and the Plaintiff not be eligible to receive her share under the terms of the plan. The balance of such insurance shall be maintained with the minor children as beneficiaries during the minority of either or both.
8. So long as he has physical custody of the minor children, CT Page 3535 the Defendant shall be entitled to claim the personal exemption for the minor children on his state and federal income tax returns commencing with the tax year 2000.
9. The Defendant shall pay to the Plaintiff the sum of twenty-five thousand ($25,000.00) dollars within six (6) months from the date of this Memorandum as and for a lump sum property settlement. At the time of said payment, the Plaintiff shall execute a Quit Claim Deed to the Defendant transferring her interest in the jointly-owned real estate located at 33 Prospect Place, East Haven. The Defendant shall have exclusive possession of said premises as of the date of this Memorandum, and he shall be responsible for all maintenance and upkeep, including the payment of the mortgage, Insurance, and real estate taxes, and, further, he shall indemnify and hold the Plaintiff harmless from any claims or indebtedness arising therefrom.
10. Personal Property:
 a. The Defendant shall be entitled to the balance in Citizen's bank and his Credit Union as shown on his Financial Affidavit.
 b. The Defendant shall retain ownership both motorcycles and the GMC pickup, and the Plaintiff shall retain ownership of the 1993 Hyundi. The parties shall cooperate with each other in the signing of any sale, transfer, or registration documents.
 c. The furnishings of the minor children shall remain at the home of the Defendant. The balance of the home furnishings shall be divided as nearly equally as possible. If the parties are unable to agree, the matter is referred to Family Relations for mediation and recommendation.
11. The Defendant is currently vested in a pension through the City of East Haven. The parties shall, by means of a Qualified Domestic Relations Order (QDRO), share equally in that portion of the pension benefit accrued during the period of their marriage. At the time of the hearing, both counsel indicated to the Court that independent counsel would be hired to prepare the necessary documentation and that insufficient information was available as of the date of the hearing regarding all of the terms of the pension plan and the procedures for its division. Therefore, the CT Page 3536 Court reserves jurisdiction to enter appropriate orders dividing same consistent with the expressed intent of the parties, the terms of the plan, any income tax consequences, and equity to both parties in light of the overall financial orders of this Court. Defendant shall pay the attorney fees and costs for the preparation of a QDRO.
12. The parties shall divide the 1999 state and federal income tax refund equally. Each shall cooperate with the other in endorsing and/or negotiating the check(s), said division to take place within seven (7) days of receipt of the check(s) by either party.
13. With the exception of the Defendant's obligation to pay a portion of the Plaintiff's attorneys fees, the parties shall each be responsible for the debts as shown on their respective Financial Affidavits, and they shall indemnify and hold each other harmless from any liability thereon.
14. Counsel for the Plaintiff is ordered to prepare a Judgment File consistent with this Memorandum within thirty (30) days hereof.
The Court
Shay, J.